169 N.J. Super. 168 (1979)
404 A.2d 366
C. ET AL., PLAINTIFF,
v.
R., DEFENDANT.
IN THE MATTER OF THE ADOPTION OF CHILDREN BY P.
Superior Court of New Jersey, Chancery Division.
Decided April 23, 1979.
*170 Mr. Ronald Matzner for plaintiffs C. and P.
R., attorney pro se.
MacKENZIE, J.S.C.
Will a judgment for arrearages under a support order against the biological father of minor children survive the entry of a judgment of adoption of the children by the stepfather? To answer this question requires construction of the recent comprehensive revision of the Adoption Act, N.J.S.A. 9:3-37 et seq. (L. 1977, c. 367, effective March 8, 1978). Consideration of the distinction between vested and unvested rights is implicit in this case of first impression.
The facts are simple and essentially uncontroverted. C. (hereinafter Mrs. P.) and R. were divorced by judgment of this court entered on May 22, 1974. By the terms of the judgment R. was to pay $50 weekly to C. through the Morris County Probation Department for the support and maintenance of his two minor children. On June 2, 1974 C. married P.
Almost immediately R. became delinquent in meeting his support obligations. No payments were made from the middle of 1976 until May 30, 1978.[1] Numerous enforcement motions brought by the Probation Department on behalf of Mrs. P. *171 (R. 1:10-5) were largely unsuccessful because R. had absented himself from the State. At least one bench warrant for his failure to appear in court was issued. The arrears now amount to $5,130.
P. now seeks to adopt the children, N.J.S.A. 9:3-45.[2] Mrs. P. consents to the adoption. R., who has now returned to New Jersey, does not object to the adoption. However, R. has refused to consent to the adoption without a release from Mrs. P. for the child support arrears. Mrs. P. now moves to fix the sum of the arrearages and reduce them to judgment, on the authority of N.J.S.A. 2A:16-18; Biddle v. Biddle, 150 N.J. Super. 185 (Ch. Div. 1977). R. resists, denying the amount of arrears. R., unemployed through no fault of his own for significant periods of time while the arrearages developed, argues that a judgment of adoption will extinguish both his future and past obligations to the children.[3] He has not made a motion to vacate the child support provision of the judgment, nor the accrued arrears. Nor is an issue of waiver, equitable estoppel or laches presented. Tancredi v. Tancredi, 101 N.J. Super. 259 (App.Div. 1968); Liss v. Liss, 19 N.J. Super. 358 (App.Div. 1952).
Child support during minority is a continuous duty of both parents. Federbush v. Federbush, 5 N.J. Super. 107 (App.Div. 1949). This obligation may be defined by court order. N.J.S.A. 2A:34-23, 24; N.J.S.A. 9:2-1, et seq. Orders operate for the present, but are subject to modification upon a showing of change of circumstances. See N.J.S.A. 2A:34-23; Smith v. Smith, 72 N.J. 350, 360 *172 (1977). Child support payments do not vest as they accrue, nor do past due installments automatically vest. Federbush v. Federbush, 5 N.J. Super. 107, 110, supra. The extent and means by which delinquent payments are enforced remains within the court's discretion. Welser v. Welser, 54 N.J. Super. 555 (App.Div. 1959).
The duty to support minor children ordinarily ceases upon emancipation by age, marriage, self-sufficiency or upon termination of parental rights. Cohen v. Cohen, 6 N.J. Super. 26 (App.Div. 1949); but see Kruvant v. Kruvant, 100 N.J. Super. 107, 119-120 (App.Div. 1968); and see, generally, Annotation, 39 A.L.R.3d 1292 (1971). However, the court may in appropriate circumstances enter a support order under N.J.S.A. 2A:34-23 which survives the death of their father. Grotsky v. Grotsky, 58 N.J. 354, 361 (1971).
The legal effect of an adoption is set forth in N.J.S.A. 9:3-50, which provides:
a. The entry of a judgment of adoption shall terminate all relationships between the adopted child and his parents and all rights, duties and obligations of any person that are founded upon such relationships, including rights of inheritance under the intestate laws of this State, except such rights as may have vested prior to the entry of the judgment of adoption; provided, however, that when the plaintiff is a stepfather or stepmother of the adopted child and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationship between the child and such mother or father or any rights, duties or obligations based thereupon. For good cause, the court may in the judgment provide that the rights of inheritance from or through a deceased parent will not be affected or terminated by the adoption.
b. The entry of a judgment of adoption shall establish the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock. For good cause, the court may direct the entry of judgment nunc pro tunc as of the date the action was instituted. In applying the intestate laws of this State, an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock. In the construction of any testamentary *173 or other document executed subsequent to the effective date of this act, an adopted child shall be deemed lawful issue of the adopting parents unless such document shall otherwise provide. [Emphasis supplied]
The statute and its predecessors clearly contemplate a complete severing, a clean break of the adopted child's ties and relationship with the natural parent in futuro. All unvested legal rights between the adopted child and his biological parent are absolutely terminated. The natural parent is relieved of all future duties and obligations to the child and divested of all rights with respect to the child. The Legislature obviously intended to treat an adopted child as if he had been born to the adopting parents in lawful wedlock. The biological parent becomes largely a nonperson vis-a-vis the child following the adoption. But does cutting off of parent-child duties and obligations necessarily require the extinguishment of a money judgment for support arrearages?
One writer concludes that the provision terminating the relationship between biological parent and child is not intended to have merely a prospective effect. See, 19 N.J. Practice (Ackerson and Fulop, Skills and Methods) (2 Ed. 1973), § 809 at 551 (1973). The author cites no New Jersey decisional authority for his conclusion except the trial court opinion in Nickell v. Gall, 90 N.J. Super. 539, 544 (Ch. Div. 1966). This decision was reversed, 49 N.J. 186 (1967).
R's position finds some support in In re Adoption of Children by D., 61 N.J. 89, 93 (1972). In a per curiam opinion, the effect of the entry of a judgment of adoption was described by way of dictum as follows:
* * * [O]n the one hand, a non-consenting natural parent is thereby permanently cut off from all parental rights and benefits, tangible and intangible, including even the privilege of seeing and visiting his child, as if it were never his, and, on the other hand, the child is forever deprived of every connection with and benefit from his parent except the right to inherit. [Emphasis supplied] *174 However, the Supreme Court was construing a statute which omitted any reference to "vested" rights of adopted children.[4] The presence today of statutory language reserving vested rights to children diminishes the significance of the Supreme Court's construction in D.
On the other hand, a plain reading of the emphasized language indicates a legislative intention to preserve for the benefit of adopted children certain vested rights as against their biological parent(s). The reservation of vested rights is an innovation in the 1978 act. The very wording of the statute suggests a broad construction as relating to all vested parent-child rights, and not only those relating to inheritance.
Further support for this construction is intrinsic to the statute. N.J.S.A. 9:3-37 provides that
*175 This act shall be liberally construed to the end that the best interest of children be promoted. Due regard shall be given to the rights of all persons affected by an adoption.
The best interests of adopted children will presumably be served by reserving to them their beneficial right to enjoy that support which their biological father denied to them previously. Protection of the children's financial interests by vesting the arrearages will serve the purposes of the 1978 Adoption Act. A fund to allow for, among other things, college expenses is an obvious example.
Had the Legislature intended to extinguish accrued child support arrears retroactively upon the adoption of a child, it would clearly and explicitly so provide. For instance, a wife who has remarried is denied unvested alimony arrearages which accrued prior to her remarriage. N.J.S.A. 2A:34-25; Stein v. Fellerman, 144 N.J. Super. 444 (App.Div. 1976), certif. den. 73 N.J. 50 (1977). Notwithstanding N.J.S.A. 2A:34-25, a judgment for alimony arrearages entered prior to a wife's remarriage remains enforceable following her remarriage. See Winter v. Winter, 162 N.J. Super. 456, 464 (App.Div. 1978). Allowing a remarried woman to enforce money judgments against her former husband is not deemed to be contrary to public policy. Neither can public policy against protecting the financial interests of adopted children be perceived. Nor can it be understood that entry (and collection) of the judgment for arrears will undermine the stability of the new parent-child relationship resulting from adoption. Surely, Mr. and Mrs. P. do not perceive such a danger.
Finally, the authorities cited by R. in support of his argument for retroactive termination of his support duty to the children are both factually inapposite and depend upon construction of prior law. LaBove v. Metropolitan Life Ins. Co., 164 F. Supp. 808 (D.N.J. 1958), aff'd 264 F.2d 233 (3 Cir.1959); In re Jacques, 48 N.J. Super. 523 (Ch.Div. 1958); Page v. Johnson, 45 N.J. Super. 97 (Ch.Div. 1957).
*176 Once these support arrearages are reduced to judgment, the judgment has the same finality of any other money judgment. See Winter v. Winter, supra, 162 N.J. Super. at 461. Reducing these unpaid child support payments to judgment constitutes the vesting of a judicially defined right of these adopted children. The money judgment thus obtained is protected by the language of N.J.S.A. 9: 3-50(a) so long as the vesting occurs prior to (if only moments prior) the entry of the judgment of adoption. The judgment of adoption will eliminate the duty of R. to support these minor children prospectively.
For the foregoing reasons (1) judgment is entered in that matrimonial action in favor of Mrs. P. on behalf of the children and against R. for $3,330;[5] (2) judgment of adoption of the two children is entered in favor of P.,[6] and (3) the judgment on arrears shall not be extinguished by but shall survive the judgment of adoption.
NOTES
[1] R. paid $100 on account of arrears to obtain his release from the Morris County Jail following his arrest on a failure to appear warrant. No further payments have been made.
[2] Without objection, the motion to fix arrears in the matrimonial action has been consolidated by the court, on its own motion, with the adoption proceeding (R. 4:38-1(a)) for reason of economy of judicial time and consistency of ruling. The tortuous, course by which these cases reached this court at this time does not bear repeating.
[3] R.'s pre se arguments were somewhat less detailed and sophisticated than as reflected in this opinion.
[4] Compare the provisions of N.J.S.A. 9:3-50 with the language of the predecessor statute, N.J.S.A. 9:3-30, which reads as follows:

A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State; provided, however, that when the adopting parent is a stepfather or stepmother, and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationships between the child and such mother or father, nor the rights of inheritance under the intestate laws of this State through the other parent.
B. The entry of a judgment of adoption shall establish the same relationships, rights, duties and obligations between the child and the adopting parent as if such child were born to such adopting parent in lawful wedlock. In applying the intestate laws of this State, an adopted child shall have the same rights of inheritance as if born to the adopting parent in lawful wedlock. In the construction of any testamentary or other document executed subsequent to the effective date of this act, an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide.
N.J.S.A. 9:3-30 was explicitly repealed by L. 1977, c. 367, § 20.
[5] R. was allowed credit for $1,800 because of his financial inability to comply fully with the support order. Martindell v. Martindell, 21 N.J. 341, 355 (1956).
[6] The proofs in the adoption action clearly demonstrate that R. neglected and abandoned the children, and that their best interest would be served by permitting their adoption by P.