JOAN CLAIRE HOPKINS

*v.*

ALLEN H. YARBROUGH, III

(No. 14861)

Decided December 11, 1981.

*Robert L. Godbey* for appellant.

*Broh, Vital & Neuner and Richard Vital* for appellee.

MCHUGH, JUSTICE:

This action is before this Court upon the petition of Joan Claire Hopkins (hereinafter "appellant") for an appeal from the final orders of the Circuit Court of Cabell County, West Virginia. The circuit court held that inasmuch as the present husband of the appellant had adopted the appellant's two minor children, the appellee, Allen H. Yarbrough, III, was relieved from all obligations to the children including arrearages in child support. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

According to the petition, the appellant and the appellee, Allen H. Yarbrough, III, were married on August 14,

1965. However, by order entered May 10, 1973, in the Domestic Relations Court of Cabell County, the parties were divorced.[1] Pursuant to that order, the appellant was to receive custody of the parties' two minor children and $50.00 per month as alimony. The appellee was ordered to pay $400.00 per month as support and maintenance for the children. Furthermore, the circuit court ratified, approved and confirmed the parties' property settlement agreement.

On April 9, 1976, the appellant married her present husband, Dale W. Hopkins, and the appellee was relieved by court order of further alimony payments. On July 2, 1979, the appellant's present husband adopted the parties two minor children. The adoption took place in Colorado, and the appellee was present and represented by counsel.

The record indicates that the appellee failed to comply in several respects with the May 10, 1973, divorce decree of the Domestic Relations Court of Cabell County. Among other things, child support payments were in arrears, and the appellant instituted various proceedings seeking relief in Cabell County against the appellee. Subsequently, the appellee filed a petition in the Circuit Court of Cabell County praying that he be relieved from child support payments. In that petition, the appellee alleged that the children had been adopted by the appellant's present husband.

On October 25, 1979, a hearing was held in the circuit court upon the appellee's petition for relief from payment of child support and upon prior orders of the circuit court entered in favor of the appellant requiring the appellee to make such payments. No evidence was taken at that hearing.

By order entered on November 8, 1979, the Circuit Court of Cabell County denied the motion of the appellant to

---

[1] The Domestic Relations Court of Cabell County, West Virginia, was redesignated Circuit Court of Cabell County pursuant to the Judicial Reorganization Amendment to the Constitution of West Virginia. That amendment was ratified November 5, 1974.

establish the appellee's child support arrearages as a sum certain. Specifically, the circuit court held that, as a result of the adoption, the appellant had, from the date of divorce to the date of adoption and thereafter, forfeited her right to enforce the payment of child support. The appellee was relieved of all payments to the appellant "past, present and future."[2]

By order entered November 20, 1979, the circuit court overruled the motion of the appellant to set aside the circuit court's order of November 8, 1979. Subsequently, by order entered March 31, 1980, the circuit court overruled the appellant's motion for attorney fees and court costs.

It is from the final orders of the Circuit Court of Cabell County that the appellant appeals to this Court.

The appellant is not seeking in this action to require the appellee to pay child support for any period of time subsequent to the July 2, 1979, adoption of her two children. Rather, the appellant contends that the Circuit Court of Cabell County was without authority to alter or cancel the liability of the appellee for unpaid child support payments which accrued prior to the adoption. Consequently, the appellant asks this Court to direct the circuit court to ascertain the specific amount of child support arrearages payable by the appellee.

In determining the appellee's liability for child support arrearages, this Court must consider the legal effect of the

---

[2] The November 8, 1979, order of the Circuit Court of Cabell County states, in part, as follows:

The Court, after hearing arguments of counsel, and after mature consideration, is of the opinion to deny plaintiff's motion to establish arrearage as a sum certain and to grant defendant's motion relieving defendant from all payments to plaintiff, past, present and future, on the grounds that the plaintiff, by permitting her present husband to adopt the infant children of the parties, had forfeited her right to enforce the payment of prior decreedal judgments, medical expenses for the children and accrued child support payments from the date of divorce to the date of adoption by the plaintiff's present husband and thereafter, by virtue of the Court's personal opinion and C. 48, Art. 4, Sec. 5 of the West Virginia Code, as amended.

Colorado order of adoption upon such arrearages. Moreover, this Court must consider the legal effect of the May 10, 1973, divorce decree which ordered the appellee to pay the appellant $400.00 per month in child support.

In West Virginia, the legal effect of an order of adoption is described by statute. As *W. Va. Code*, 48-4-5 [1969], states, in part:

> Upon the entry of such order of adoption, the natural parent or parents, any parent or parents by any previous legal adoption, and the lineal or collateral kindred of any such parent or parents, except any such parent who is the husband or wife of the petitioner for adoption, shall be divested of all legal rights, including the right of inheritance from or through the adopted child under the statutes of descent and distribution of this State, and shall be divested of all obligations in respect to the said adopted child, and the said adopted child shall be free from all legal obligations, including obedience and maintenance, in respect to any such parent or parents. From and after the entry of such order of adoption, the adopted child shall be, to all intents and for all purposes, the legitimate issue of the person or persons so adopting him or her and shall be entitled to all the rights and privileges and subject to all the obligations of a natural child of such adopting parent or parents.

The legal effect of an order of adoption is also described by statute in Colorado, where the adoption of the appellant's two minor children by her present husband occurred. Comparable to the West Virginia statute, *Colo. Rev. Stat.*, § 19-4-113, states as follows:

> (1) After the entry of a final decree of adoption, the person adopted shall be, to all intents and purposes, the child of the petitioner. He shall be entitled to all the rights and privileges and be subject to all the obligations of a child born in lawful wedlock to the petitioner.

> (2) The natural parents shall be divested of all legal rights and obligations with respect to the child, and the adopted child shall be free from all

legal obligations of obedience and maintenance with respect to the natural parents.

(3) Nothing in this article shall be construed to divest any natural parent or child of any legal right or obligation where the adopting parent is a stepparent and is married to said natural parent.

As indicated above, the appellant is not seeking child support payments from the appellee for any period of time subsequent to the adoption. However, the West Virginia and Colorado statutes do not expressly answer the question concerning the appellee's liability for child support arrearages which accrued prior to the adoption. Very few courts have discussed such question, and no cases on that point have been decided in West Virginia.

In *C. v. R.*, 169 N.J. Super. 168, 404 A.2d 366 (1979), a motion to determine child support arrears was consolidated with an adoption proceeding. In that case, judgment was entered for child support arrears in the amount of $3,330 against the natural father, and judgment of adoption of the children was entered in favor of the natural mother's new husband. The court in *C. v. R.* held that the judgment for arrears survived the adoption but that the adoption eliminated the natural father's duty to prospectively support the children.

The court in *C. v. R.* rejected the argument of the natural father that the adoption extinguished his past obligations to the children. In so holding, the court relied upon a New Jersey adoption statute which provided that an adoption terminates all relationships between the adopted child and the natural parents, "except such rights as may have vested prior to the entry of the judgment of adoption. . . ." 404 A.2d at 368. As the court in *C. v. R.* stated:

> The statute and its predecessors clearly contemplate a complete severing, a clean break of the adopted child's ties and relationship with the natural parent *in futuro*. All unvested legal rights between the adopted child and his biological parent are absolutely terminated. The natural parent

is relieved of all future duties and obligations to the child and divested of all rights with respect to the child.

404 A.2d at 369.

It should be noted that the court in *C. v. R.* stated as follows: "Child support payments do not vest as they accrue, nor do past due installments automatically vest." 404 A.2d at 368. The Court in *C. v. R.* concluded that the unpaid child support payments vested when they were reduced to judgment. The rule in West Virginia, however, is different. As indicated below, in this State, child support payments vest as they accrue.

In *Korczyk v. Solonka,* 130 W. Va. 211, 42 S.E.2d 814 (1947), the plaintiff, Sophia Korczyk, brought an action in the Circuit Court of Raleigh County, West Virginia, on behalf of herself and others to subject the real and personal property of her former husband to the satisfaction of a July 29, 1929, Logan County, West Virginia, divorce decree. That decree awarded the plaintiff custody of the children and directed the former husband to pay $40.00 per month for the support and maintenance of the children. The former husband made no such payments.

One of the certified questions before this Court in *Korczyk* was whether the lien created by the Logan County divorce decree was enforceable against the real estate of the former husband. This Court answered that question in the affirmative and based its conclusion concerning unpaid child support upon cases relating to the payment of alimony installments.[3] With respect to alimony this Court recognized that "[i]f there is no fraud or other judicially

---

[3] In *Korczyk v. Solonka, supra,* this Court stated as follows:

But for the purpose of answering the questions here certified, we do not think there is any rational basis for a distinction between alimony decreed to a wife to be paid in installments and sums decreed in the same manner to be paid the wife for the maintenance of the children. Therefore, the decisions of this Court with reference to alimony are determinative of the questions here considered.

42 S.E.2d at 817.

cognizable and harmful circumstance in the procurement of a decree for alimony, accrued installments of alimony are vested. . . ." 42 S.E.2d at 818. Moreover, this Court recognized that matured installments of alimony "stand as decretal judgments." 42 S.E.2d at 818. Consequently, this Court held by analogy in *Korczyk* that the plaintiff could enforce against her former husband the lien of the unpaid and accrued child support installments.[4]

In *Rakes v. Ferguson,* 147 W. Va. 660, 130 S.E.2d 102 (1963), a July 16, 1951, divorce decree entered in the Circuit Court of Wayne County, West Virginia, required a former husband to pay $80.00 per month as child support. The former husband became delinquent in such installment payments and in 1960 asked the Circuit Court of Wayne County to modify the 1951 decree. In *Rakes,* this Court held in Syllabus Points 1 and 2 as follows:

> 1. The provision of Section 15, Article 2, Chapter 48, Code, 1931, as amended, which confers jurisdiction upon the trial court to revise or alter installments for the support of the children or to make a new decree concerning them, pertains to future installments for the support of the children of the parties to a suit for divorce or annulment of a marriage and does not authorize such court to alter or cancel accrued installments for the support of the children.

> 2. As the statute does not authorize or empower the trial court to alter or cancel accrued installments for the support of the children of the parties to a suit for divorce or annulment of a marriage, such court does not have jurisdiction to alter or

---

[4] In *Korczyk v. Solonka, supra,* this Court cited *Harman v. Harman,* 120 W. Va. 199, 196 S.E. 361 (1938). The *Harman* opinion states as follows: "When installments of alimony accrue, the power of the court, under Code, 48-2-15, to alter, control or cancel them terminates (no fraud appearing), and 'the right thereto of the payee becomes vested.' *Biggs v. Biggs,* 117 W. Va. 471, 474, 185 S.E. 857, 858." 120 W. Va. at 200, 196 S.E. at 362. *W. Va. Code,* 48-2-15 (1980), *infra,* relates to alimony and the custody and maintenance of children.

cancel any award of support for the children that has accrued under a prior final decree.[5]

Moreover, in Syl. pt. 2, *Horton v. Horton,* ___ W. Va. ___, 264 S.E.2d 160 (1980), this Court held as follows: "A circuit court lacks the power to alter or cancel accrued installments for child support."

Upon all the above, we are of the opinion that the appellee's unpaid child support installments, accruing prior to the adoption constituted arrearages vested on behalf of the appellant and that the circuit court was without authority to modify or cancel such accrued installments. The adoption had no effect upon the previously accrued arrearages. Specifically, we hold that in the absence of fraud or other judicially cognizable and harmful circumstance in the procurement of a decree for child support, a circuit court is without authority to modify or cancel arrearages of a former husband's child support payments, which payments accrued prior to the date of the adoption of such children by the wife's subsequent husband. *W. Va. Code,* 48-4-5 [1969].[6] The circuit court

---

[5] *W. Va. Code,* 48-2-15 [1980], concerning alimony and the custody and maintenance of children provides, in part, as follows:

... [T]he court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of such child or children, revise or alter such order concerning the care, custody, education and maintenance of the children, and make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require.

[6] Our holding in this case was somewhat foreshadowed by our opinion in *Long v. City of Weirton,* 158 W. Va. 741, 214 S.E.2d 832 (1975), where we stated as follows:

Although, at the time of the accident, the infant plaintiff's natural mother and father were divorced, the natural father's obligation for necessary medical expenses was not necessarily terminated. The duty of maintenance on the part of the fathers in respect to their infant children is a principle of natural law, founded upon common sense and natural justice. Where the child is living away from the father, the question of his liability will depend upon the circumstances of the case. Buchanan v. Buchanan, 170 Va. 458, 197 S.E. 426 (1938); Mihalcoe v. Holub, 130 Va. 425, 107 S.E. 704 (1921). See also, Rakes v. Ferguson, 147 W.

committed error, therefore, in denying the motion of the appellant to establish the child support arrearages accruing before the adoption as a sum certain.[7]

With respect to issues appearing in the record other than the question of child support arrearages, such as insurance coverage concerning the adopted children, various orders of the circuit court indicate that the parties have modified the property settlement agreement originally ratified, approved and confirmed by the May 10, 1973, divorce decree. Part, but not all, of the provisions of the original property settlement agreement related directly to the adopted children. Upon remand of this action, the circuit court should inquire into the status of that agreement in relation to the previous orders of the circuit court and modifications by the parties and permit the parties to present evidence, if necessary, upon the question of whether the parties have failed in their respective obligations.[8]

---

Va. 660, 130 S.E.2d 102 (1963). The infant plaintiff was not adopted by Mr. Conley until 1966—some three years after the accident. Under the circumstances in this case, the recovery of such expenses by the natural father, clearly shown to have been incurred, was proper.

214 S.E.2d at 861.

[7] The amount of child support payments the appellee was required to pay per month was determined by the May 10, 1973, divorce decree entered in the Domestic Relations Court of Cabell County. Pursuant to *W. Va. Code*, 38-3-1 [1931], that decree had the effect of a judgment. As that statute provides:

A decree for land or specific personal property and a decree or order requiring the payment of money shall have the effect of a judgment for such land, property or money, and be embraced by the word 'judgment' where used in this or in articles four, five, and six of this chapter. But a decree or order in chancery, other than for the payment of money, or a decree or order for alimony or maintenance, may be enforced as it might have been if this and the following section had not been enacted.

[8] The May 10, 1973, order of divorce of the Domestic Relations Court of Cabell County states, in part, as follows:

That the agreement entered into by the parties with reference to their respective property rights and testified to by the plaintiff and a part of the record of this proceeding, be and the same is

In her petition for appeal, the appellant asks this Court to assess costs and attorney fees against the appellee with respect to the circuit court proceedings and the prosecution of this appeal. A similar request by the appellant was denied by the Circuit Court of Cabell County by order entered March 31, 1980.

Inasmuch as this action is being remanded to circuit court for further proceedings, and in view of the relief granted to the appellant in this appeal, the circuit court is directed to reconsider its denial to the appellant of costs and attorney fees. Accordingly, the order of the circuit court denying the same is hereby set aside.

This Court has indicated previously that in reviewing the ruling of a trial court with respect to costs and attorney fees in cases such as the one now before this Court, the standard is whether such ruling by the trial court constitutes an abuse of discretion. *Sandusky v. Sandusky,* ___ W. Va. ___, 271 S.E.2d 434, 438 (1981); *Johnson v. Johnson,* 159 W. Va. 434, 223 S.E.2d 195, 197 (1976); Syl. pt. 3, *Bond v. Bond,* 144 W. Va. 478, 109 S.E.2d 16 (1959).

---

hereby ratified, approved and confirmed, said agreement being as follows:

\*     \*     \*

(f) The defendant shall maintain and keep in full force and effect a hospital insurance policy upon the two minor children.

(g) The defendant shall pay and discharge all medical and dental expenses incurred for the two minor children which may be in excess of any hospitalization or medical insurance coverage.

(h) The defendant shall pay and provide for expenses (tuition, books and supplies) for a four-year college education or its equivalent, for the two minor children.

(i) The defendant shall continue to maintain and keep in full force and effect a $100,000.00 life insurance policy upon his life with the Connecticut Mutual Life Insurance Company and retain the said minor children as beneficiaries thereon.

(j) The defendant shall permit the plaintiff to declare the youngest of said children, to-wit, Beth Anne Yarbrough, as a dependent and exemption for income tax purposes at such time as the plaintiff may become gainfully employed.

Upon all of the above, the ruling of the Circuit Court of Cabell County that the appellee is not liable for child support arrearages accruing prior to the adoption is hereby reversed, and this case is remanded to that court with directions that such child support arrearages be established as a sum certain and, further, that judgment be entered in favor of the appellant consistent with the principles in this opinion.

*Reversed and Remanded.*