460 S.E.2d 71

**David E. HINERMAN, Plaintiff Below, Appellee,**

v.

**Mary Alice HINERMAN, Defendant Below, Appellant.**

No. 22652.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1995.

Decided June 19, 1995.

258

Penny E. Loucas, Weirton, for appellant.

William T. Fahey, Hinerman & Fahey, Weirton, for appellee.

PER CURIAM:

This action is before this Court upon the appeal of the appellant, Mary Alice Hinerman, from the final order of the Circuit Court of Hancock County, West Virginia, entered on February 25, 1994. Pursuant to that order, the circuit court adopted, *inter alia,* the determination of the family law master that the residence of the appellant and the appellee, David E. Hinerman, was the separate property of David E. Hinerman and not subject to equitable distribution. This Court has before it all matters of record and the briefs of counsel. For the reasons stated below, this Court affirms, in part, and reverses, in part, the final order of the Circuit Court of Hancock County, and we remand this action to that court for further proceedings.

I

The record indicates that in 1968, in contemplation of marriage, the appellant and the appellee shopped for and located a residence in Weirton, West Virginia. By deed dated October 8, 1968, the residence was purchased and titled in the name of David E. Hinerman, the appellee. The purchase price for the property was $16,500, and the appellee paid the down payment and all of the subsequent trust deed installments until the debt was retired during the marriage.

On November 30, 1968, soon after the purchase, the appellant and the appellee were married. Mary Alice Hinerman's name, however, was never added to the title, even though the appellee, in testimony before the family law master, stated that he intended to add the appellant's name to the title after the date of marriage.

The appellant asserted that the appellee never kept his promise to add her name to the title and, furthermore, explained before the family law master:

He said that my name would not go on it when the thing was purchased because I was teaching school and I was single, and it would look bad in the paper if there were two separate names; I believed him[.] After we were married, as time went on I said, 'Dave, how about putting my name on the house?' He said, 'Oh, no, Mary Alice, if something would happen at dancing school [operated by Mary Alice Hinerman] you would be sued and we would lose the house; so, it will stay in my name because that way we don't lose anything.

During the marriage, David Hinerman, the appellee, worked for Weirton Steel Corporation at a recent salary of approximately $37,000 per year. Moreover, in 1979, during the marriage, the appellee and his brother purchased and operated a rental building in Weirton. The purchase price was $63,600. The record indicates that the down payment for the building was given to the appellee and his brother by their parents, and the trust deed for the balance of the purchase was retired from rental payments.

The appellant, during the marriage, operated a children's dancing school, which, in recent years, brought the appellant an annual net income of approximately $2,000. In addition, the appellant worked as an elementary school teacher until the birth of the parties' only child, at which time, early in the marriage, the appellant left her teaching employment.

With regard to the principal expenses of the parties, the testimony before the family law master revealed that, although David E. Hinerman paid the trust deed installments for the marital residence until the debt was retired, the appellant paid for their child's education at parochial schools through grade twelve. Thereafter, the appellee paid the majority of their child's expenses for a college education at Ohio State University.

The marriage of the parties deteriorated, and in 1985 divorce proceedings were instituted. A reconciliation resulted in the withdrawal of those proceedings. The reconciliation failed, however, and in January, 1991, a complaint for divorce was filed by David E. Hinerman. Pursuant to an order entered on November 6, 1992, the Circuit Court of Hancock County bifurcated the proceedings by (1) granting the parties a divorce and (2) reserving for further consideration the issues of equitable distribution and support.

Thereafter, the family law master took evidence upon the issues of equitable distribution and support, and in an October, 1993, report concluded and recommended, *inter alia*, that (1) subject to $6,750 to be paid to Mary Alice Hinerman representing an equitable share in the retirement of the trust deed upon the marital residence, the marital residence was the separate property of David E. Hinerman and not subject to equitable distribution; (2) the appellee's interest in the rental building, jointly owned with his brother, was also the appellee's separate property; (3) the appellant, Mary Alice Hinerman, was entitled to rehabilitative alimony at $400 per month for three years, rather than permanent alimony; and (4) the appellant and the appellee should bear their own attorney fees. Those conclusions and recommendations were adopted by the Circuit Court of Hancock County pursuant to the final order of February 25, 1994, and form the basis of this appeal.

## II

As this Court recognized in *Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995), a recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W.Va.Code*, 48A–4–16 [1993], *W.Va.Code*, 48A–4–20 [1993], and pursuant to this Court's *Rules of Practice and Procedure for Family Law*. The final order of a circuit court in such cases is, of course, reviewable by this Court. Moreover, we have recently recognized that rulings upon questions of law are reviewed *de novo. Stephen L.H. v. Sherry L.H.*, No. 22084, — W.Va. — n. 19, — S.E.2d — n. 19 [1995 WL 104573] (Mar. 6, 1995); *State*

*v. Honaker*, 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994); *Adkins v. Gatson*, 192 W.Va. 561, 565, 453 S.E.2d 395, 399 (1994); *State v. Stuart*, 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994); syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

The first issue raised by the appellant concerns her assertion that she was entitled to an equitable distribution of fifty percent of the value of the marital residence, less the appellee's down payment. The record indicates that the residence was purchased for $16,500 in 1968, and, during this litigation, was appraised at $38,000 and sold for that amount. The family law master and circuit court determined that the residence was not subject to equitable distribution. Specifically, the family law master found that the marital residence "was acquired by the plaintiff [the appellee] prior to the marriage and has always been titled in the name of the plaintiff alone, and is his separate property." The appellant was awarded $6,750 as to the residence, representing an equitable share in the retirement of the trust deed upon the property.

The definitions of "marital property" and "separate property" are statutory and are found in *W.Va.Code*, 48–2–1 [1992]. Moreover, provisions concerning the disposition of marital property are also statutory and are found in *W.Va.Code*, 48–2–32 [1984]. Those statutes were discussed by this Court in *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), syllabus point 1 of which declares:

Equitable distribution under W.Va.Code, 48–2–1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

Specifically, we stated in *Whiting* as follows, the quoted language of *W.Va.Code*, 48–2–1 [1986], therein appearing in the current version of that statute:

For purposes of equitable distribution, 'marital property' is defined in W.Va.Code, 48–2–1(e)(1) (1986), as '[a]ll property and earnings acquired by either spouse during a marriage, ... regardless of the form of ownership, ... except that marital property shall not include separate property....' 'Separate property' is defined in W.Va. Code, 48–2–1(f), as including property acquired by a spouse before the marriage. Whether a particular unit of property is marital or separate property is primarily a question of law.

183 W.Va. at 454–55, 396 S.E.2d at 416–17.

■ Many of the statutory provisions in this area, however, were enacted in light of the opinion of this Court in the leading case of *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983). In syllabus point 2 of *LaRue*, we held:

> The doctrine of equitable distribution permits a spouse, who has made a material economic contribution toward the acquisition of property which is titled in the name of or under the control of the other spouse, to claim an equitable interest in such property in a proceeding seeking a divorce. Because these are economic contributions, the right to claim such equitable relief is not barred because the party seeking them may be found at fault in the divorce action itself.

*See also* syl. pt. 3, *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987); *Burger v. Burger*, 176 W.Va. 416, 419, 345 S.E.2d 18, 21 (1986): "[A] court is empowered to divide marital property irrespective of nominal or actual title."

■ In this action, it is clear that the marital residence was marital property and subject to equitable distribution. The appellant and the appellee shopped for and located the property, and the appellee stated that he purchased the residence in contemplation of marriage. The appellant and the appellee were married soon after the October 8, 1968, deed. Moreover, the appellee, in his testimony before the family law master, indicated that he intended to add the appellant's name to the title after the date of marriage. The testimony of the appellant, that her name was not added to the title because the par-

ties' were single at the time of purchase and because, later, the parties were afraid that the property would be exposed to claims because of the appellant's dancing school, was unrefuted. In addition, the deed of trust payments were made from the joint checking account of the parties, although the appellee was the principal contributor to that account.

All of the evidence of record suggests that the appellant and the appellee used the property as their marital home, to which both made economic contributions within the meaning of *W.Va.Code*, 48–2–1, *et seq.* and *LaRue, supra.* Accordingly, the final order of the Circuit Court of Hancock County, that the marital residence was the separate property of the appellee, David E. Hinerman, is reversed, and this action is remanded to the circuit court for a determination and distribution of the appellant's fifty percent of the value of the marital residence, less an amount to be determined concerning the appellee's down payment upon the property and less the $6,750 previously awarded the appellant.

■ By contrast, the evidence in this action suggests that the appellee's interest in the rental building, jointly owned with his brother, was the appellee's separate property. Although that property was acquired by the appellee during his marriage, the down payment was provided by the appellee's parents, and the trust deed for the balance of the purchase was retired from rental payments. The appellee testified that a separate checking account was maintained for the rental building. Also, the appellee stated that the appellant was reimbursed for a $1,000 contribution she made for a new roof for the building. Ultimately, the rental building declined in value. This Court is of the opinion that, under the circumstances set forth in the record, the Circuit Court of Hancock County was correct in concluding that the appellee's interest in the rental building was separate property, and that aspect of the final order of the circuit court is affirmed.

With regard to rehabilitative alimony, the family law master noted the appellant's educational background and resulting earning

capacity and concluded that the appellant was entitled to rehabilitative alimony at $400 per month for three years, rather than permanent alimony. The circuit court adopted that conclusion. The appellant contends, however, that she should have been given an award of permanent alimony.

In syllabus point 1 of *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984), this Court stated: "The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained."

The circumstances in *Molnar* are similar to the facts in this action. In *Molnar,* the parties were divorced after twenty-five years of marriage, and, although the former wife, age fifty-three, had been employed during the marriage, her income was small compared to that of her former husband. The former wife was awarded rehabilitative alimony by the circuit court. Discussing the length of the marriage and the former wife's age and limited opportunities in the job market, this Court, in *Molnar,* remanded the case to the circuit court for a reconsideration of the alimony issue.

■ Recognizing that age, in particular, reflects upon the ability to work, we held in syllabus point 3 of *Molnar:*

There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

With regard to continuing jurisdiction, this Court observed, in *Molnar,* that it is generally held "in the case of an older dependent spouse, who has had a lengthy marriage, that the court should retain continuing jurisdiction unless the record is clear that the dependent spouse will be able to be financially self-supporting at the end of the rehabilitative

alimony period." 173 W.Va. at 205, 314 S.E.2d at 78.

■ In the action before this Court, the appellant and the appellee were married for over twenty years, and the appellant is more than fifty years old. She has been away from the teaching profession for approximately twenty years. The appellant left that profession upon the birth of the child of the parties. The evidence is undisputed that the children's dancing school, operated by the appellant for more than thirty years, has been in financial decline. Recently, its annual net income has been approximately $2,000. In spite of the language of *Molnar* concerning continuing jurisdiction in this context, the family law master and circuit court determined that, after three years, rehabilitative alimony would be barred.

The length of the marriage in this action, the age of the appellant, and her limited opportunities in the job market, as in *Molnar,* are significant factors to be considered in the context of alimony. It is unlikely that the children's dancing school will substantially contribute to the appellant's income in the future. This Court is of the opinion, therefore, that the issue of alimony, and whether it should be rehabilitative or permanent, and the amount, must be reconsidered by the circuit court. The appellee's statement to this Court that the appellant has recently found a permanent teaching position should be developed and considered below. Therefore, the order of the Circuit Court of Hancock County as to the award of rehabilitative alimony is set aside.

Finally, the appellant contends that the circuit court committed error in not awarding her attorney fees concerning this litigation. The only finding upon that point with any specificity was a statement by the family law master in his October, 1993 report to the effect that the appellant had needlessly protracted the litigation by searching, unsuccessfully, for hidden assets of the appellee. The circuit court stated that the family law master's finding in that regard was proper.

■ Although this Court has consistently held that a determination as to an award of attorney fees in an action such as this is

within the sound discretion of the circuit court, *Law v. Law*, 186 W.Va. 376, 380, 412 S.E.2d 777, 781 (1991), *Hopkins v. Yarbrough*, 168 W.Va. 480, 489, 284 S.E.2d 907, 912 (1981), we have indicated that such a determination should be based upon adequate findings and not perfunctorily made. *Burger, supra*, 176 W.Va. at 418, 345 S.E.2d at 20.

■ The record before this Court does not readily demonstrate how this litigation was protracted beyond the pursuit of a legitimate theory, though ultimately unsuccessful, that the appellee had hidden certain assets. In any event, no explanation as to why the litigation was needlessly protracted was provided by the family law master or the circuit court. Moreover, other factors relevant to an award of attorney fees, such as the amount of the fees in this action and the ability of the parties to pay them, were not discussed in the findings and conclusions below.

. Justice Cleckley, in his concurring opinion in *Pratt v. Pratt*, 193 W.Va. 106, 454 S.E.2d 400, 405 (1994), stated in a domestic relations matter that "we need the lower tribunals to better explain their decision so that we can give that decision proper appellate scrutiny." Accordingly, inasmuch as this action is being remanded to the circuit court for further proceedings, the circuit court is directed to reconsider the attorney fee issue and make appropriate findings. Consequently, the order of the Circuit Court of Hancock County denying the appellant attorney fees is set aside. *Hopkins, supra*, 168 W.Va. at 489, 284 S.E.2d at 912.

Upon all of the above, the final order of the Circuit Court of Hancock County, entered on February 25, 1994, is affirmed in part, reversed, in part, and this case is remanded to that court for further proceedings.

Affirmed, in part, reversed, in part, and remanded.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired Justice, and FOX, Judge, sitting by temporary assignment.