479 S.E.2d 688

**ALIREZA D., Plaintiff Below, Appellee,**

**v.**

**KIM ELAINE W., Defendant Below, Appellant.**

**No. 23420.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1996.

Decided Nov. 18, 1996.

David W. Johnson, Charleston, for Appellant.

Christopher S. Butch, Joseph Cometti, Charleston, for Appellee.

PER CURIAM:

This action is before this Court[1] upon an appeal from the final order of the Circuit Court of Kanawha County, West Virginia, entered on January 24, 1995. The final order modified the parties' 1990 divorce decree which awarded custody of the parties' two children to the appellant, Kim Elaine W. Pursuant to the final order, custody of the older child was awarded to the appellee,

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme

Alireza D.[2] The appellant contends that the modification was error.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the final order is reversed, and the circuit court is directed to restore custody of the older child to the appellant. Moreover, as detailed below, this action is remanded to the circuit court for further proceedings.

## I

The record in this action consists of hundreds of pages of orders, pleadings, transcripts and exhibits, and the briefs before this Court are lengthy. Unfortunately, those documents describe a bitter and long-standing dispute in the aftermath of the 1990 divorce concerning the parties' children.

The appellant and the appellee were married in 1975 and last cohabited in Charleston, Kanawha County, West Virginia. The parties had two children during the marriage: Ali, born on October 15, 1979, and Bijan, born on July 20, 1983. The parties separated in 1989, and the appellee filed a complaint for divorce in the Circuit Court of Kanawha County. On January 8, 1990, that court entered a divorce decree which incorporated the parties' separation agreement.

Pursuant to the terms of the divorce decree, the appellant was awarded custody of the two children, and the appellee was ordered to pay a total of $675 per month for child support. The level of child support was computed in accord with this State's Guidelines for Child Support Awards, the current authority for which is found in *W. Va. Code*, 48A–1B–1 [1996], *et seq.* In addition, the

appellee was ordered to provide full medical, hospitalization and other health insurance for the children. Moreover, the divorce decree provided that the parties would not "adversely influence the minor children against the other parent."

Following the divorce, the appellee sought employment at various locations beyond the State of West Virginia in the course of his career as a computer programmer. The appellant, on the other hand, remained in the Kanawha County area and remarried in August 1990.

In February 1992, the appellee filed the first of several petitions in the Circuit Court of Kanawha County seeking custody of the parties' two children. Thereafter, the action was referred to a family law master who conducted a series of evidentiary hearings upon the issue of custody and upon other issues raised by the parties.

The evidence adduced at the family law master level was voluminous. The evidence indicated that, to some extent, both the appellant and the appellee had violated the admonition expressed in the divorce decree that the parties would not adversely influence the minor children against the other parent. Nevertheless, the evidence concerning the conduct of the appellee was clearly more damaging. That evidence demonstrated that, following the entry of the divorce decree, the appellee engaged upon a course of conduct, over a considerable period of time, designed to alienate the children from their mother, the appellant. The appellee's conduct included instructing the children to be disruptive while in the appellant's care and coaching them to continuously proclaim to others a desire to live with the appellee.[3]

---

Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

**2.** We follow our practice in domestic relations cases involving sensitive matters and use initials to identify the parties, rather than full names. *In the matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

**3.** In one instance, Patrolman Jeff Williamson of the South Charleston Police Department was present at the appellant's residence when the children were being returned following visitation with the appellee. On that occasion, the chil-

dren expressed a reluctance to return to their mother. However, as Patrolman Williamson testified before the family law master:

> Each time the children would say that they didn't want to go back to the mother's residence, they would glance up to the father and glance at the police officer and glance to me and then back to the father as if to be ... looking for his approval[.]

Moreover, Sergeant Kay West of the child abuse unit of the South Charleston Police Department testified before the family law master as follows, in reference to another occasion:

The appellee's actions were particularly directed toward the older son, Ali, who is presently seventeen years old.

In analyzing the evidence, the family law master ultimately focused upon the conclusions of two Charleston area psychiatrists who considered the custody issue. The psychiatrists were Dr. Russell I. Voltin and Dr. John P. MacCallum. As set forth in his 1992 deposition, Dr. Voltin interviewed Bijan and the appellant and concluded that the appellee had been guilty of "emotional abuse" toward the children in terms of the conduct described above. Consequently, Dr. Voltin recommended that the appellant retain custody of both sons. On the other hand, Dr. MacCallum, who interviewed both parties, the two children and the appellant's current husband, concluded that, although the appellee had, in fact, sought to alienate the children from their mother, the appellee was not an unfit parent. Moreover, Dr. MacCallum was reluctant to conclude that the appellee's conduct constituted "emotional abuse." Noting that the older child, Ali, had expressed a desire to live with his father, the appellee, Dr. MacCallum was in agreement with Dr. Voltin that Ali's statement in that regard was, no doubt, simply reflective of the appellee's wishes. Nevertheless, affording some weight to Ali's desire to live with his father and considering all relevant circumstances, including Ali's age, Dr. MacCallum recommended that the appellee be awarded custody of Ali and that the appellant retain custody of Bijan.

After further proceedings, the family law master filed a recommended decision with the circuit court. As stated in that decision, the family law master found, *inter alia,* that the older child, Ali, has been residing with the appellee since August 1993 and that Ali had stated to the family law master that he wanted to live with his father. Moreover, noting that Dr. Voltin never interviewed Ali, the recommended decision restated the findings of Dr. MacCallum and concluded, as did Dr. MacCallum, that Ali should remain with the appellee. In particular, the recom-

mended decision stated that the remarriage of the appellant, the relocation of the appellee, the fact that Ali has resided with the appellee since August 1993 and the expressed desire of Ali to live with his father, "all constitute a material change in the circumstances" of the parties relative to the issue of custody, and that a change in custody, as to Ali, would be in that child's best interests.

Following various hearings conducted in the circuit court in September 1994, the circuit court, pursuant to the final order entered on January 24, 1995, adopted the recommended decision of the family law master and awarded custody of the older child, Ali, to the appellee. This appeal followed.

II

This Court has often observed that a recommended decision of a family law master is reviewable by a circuit court pursuant to statute, *W. Va.Code,* 48A–4–16 [1993], *W. Va.Code,* 48A–4–20 [1996], and pursuant to this Court's *Rules of Practice and Procedure for Family Law.* As we recently stated in syllabus point 1 of *Stephen L.H. v. Sherry L. H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995): "A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." *See also Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). With regard to findings of fact, this Court noted in syllabus point 3 of *Stephen L.H.:* "Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." *See also* syl. pt. 1, *Higginbotham v. Higginbotham,* 189 W.Va. 519, 432 S.E.2d 789 (1993). Of course, the final order of a circuit court in such cases is reviewable by this Court. *Magaha v. Magaha,* 196 W.Va.

The older boy, Ali, had stated to me that whenever they would go to their father's to stay with their father, that his Dad was encouraging them to misbehave and be disruptive at home and to cause problems at home and it was like he was encouraging them or coaching them to do that.

187, 190, 469 S.E.2d 123, 126 (1996); *Hinerman v. Hinerman*, 194 W.Va. 256, 259, 460 S.E.2d 71, 74 (1995); *Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995). *See generally* syl. pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996); *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995); syl. pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

■ Here, the appellant contends that the circuit court committed error in awarding custody of Ali to the appellee. As this Court held in the syllabus point of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977): "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." *See also Carter v. Carter*, 196 W.Va. 239, 244, 470 S.E.2d 193, 198 (1996); syl. pt. 2, *Michael v. Michael*, 196 W.Va. 155, 469 S.E.2d 14 (1996); syl. pt. 1, *Marilyn H.*, *supra.* It is in the context of circuit court discretion in such cases that we also observe this Court's holding in syllabus point 2 of *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977). That syllabus point states: "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." *See also W. Va.Code*, 48–2–15 [1996]; syl. pt. 1, *Donohew v. Donohew*, 193 W.Va. 184, 455 S.E.2d 553 (1995); syl. pt. 2, *Robert Darrell O. v. Theresa Ann O.*, 192 W.Va. 461, 452 S.E.2d 919 (1994); syl. pt. 1, *Lesavich v. Anderson*, 192 W.Va. 553, 453 S.E.2d 387 (1994).

■ As indicated in the recommended decision, one of the factors considered by the family law master in modifying custody was the expressed desire of the older child, Ali, to live with his father. Although both Dr. Voltin and Dr. MacCallum discounted Ali's choice as being influenced by the appellee, Dr. MacCallum and the family law master afforded the choice some degree of weight. In particular, the family law master relied upon *W. Va.Code*, 44–10–4 [1931], which

states: "If the minor is above the age of fourteen years, he may in the presence of the county court, or in writing acknowledged before any officer authorized to take the acknowledgment of a deed, nominate his own guardian, who, if approved by the court, shall be appointed accordingly [.]" That statute has been cited often by this Court with regard to custody issues in domestic relations actions. *Judith R. v. Hey*, 185 W.Va. 117, 120, 405 S.E.2d 447, 450 (1990); syl. pt. 1, *Shimp v. Shimp*, 179 W.Va. 215, 366 S.E.2d 663 (1988); syl. pt. 1, *Busch v. Busch*, 172 W.Va. 229, 304 S.E.2d 683 (1983); syl. pt. 1, *S H. v. R.L. H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982); syl. pt. 7, *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981); syl. pt. 3, *J.B. v. A. B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978). *See also* Rule 16, *W. Va. Rules of Practice and Procedure for Family Law*; D.W. O'Neill, Annotation, *Child's Wishes as Factor in Awarding Custody*, 4 A.L.R.3d 1396 (1965); 92 W. Va. L.Rev. 355, 387–88 (1990).

As indicated above, Ali is presently seventeen years old and has been residing with the appellee since August 1993. Accordingly, Dr. MacCallum and the family law master correctly suggested that Ali's desire to live with his father must be considered. Nevertheless, the evidence in this action also reveals that the appellee has made an unrelenting effort, dating at least from the entry of the divorce decree in 1990, to alienate the children, and particularly Ali, from their mother. As Dr. MacCallum acknowledged concerning Ali's choice: "[T]he more significant question is does he have the capacity to separate out his own values from those of his father and objectively evaluate the differences? And the answer to that question is, no, he does not and he may not have that for a long time."

This Court has indicated that the right of a child above the age of fourteen to nominate his or her guardian, under *W. Va.Code*, 44–10–4 [1931], is not without limitations. In *Judith R., supra*, the absence of evidence of "unfitness" of the parent selected was a relevant consideration. Similarly, in *Busch, supra*, where a father appealed a denial of his petition for custody of his fourteen-year-old

son, this Court noted that, not only had the son expressed a desire to live with his father, no allegation had been made that the father was an unfit parent. Accordingly, this Court reversed and remanded the action to the circuit court with directions to enter an order awarding custody to the father. In so holding, this Court observed, in *Busch,* that the mother did not oppose the change of custody. In the circumstances of this action, Ali's choice must be viewed in the totality of the appellee's efforts to influence his older son.

The record in this action demonstrates that, following the 1990 divorce, neither the conduct of the appellant nor the conduct of the appellee was exemplary with regard to the children. Each tended to litigate every conceivable aspect of the childrens' status *ad infinitum.* Nevertheless, although the family law master found neither party to be an unfit parent, the record clearly shows the actions of the appellee to be particularly egregious. As stated above, the appellee's conduct included instructing the children to be disruptive while in the appellant's care and coaching them to continuously proclaim to others a desire to live with him. That conduct occurred over a considerable period of time. As a result, the children have been harmed.[4] In his report of August 9, 1993, Dr. MacCallum stated:

> [The appellee] appears to have consciously manipulated the family circumstances on numerous occasions to discredit his wife, or to demonstrate the children would be better off in his custody. His methods involve subtle but persistent suggestions to the children about their mother, or about

behavior they should pursue.... [The appellee] has undermined [Ali's] relationship with his mother to the extent that it may never actually be fully healed or repairable.... It has been my observation under such circumstances that those parents who are least defensive, most neutral in their statements about others, and most objective in their statements about themselves, are usually most given to the truth and willing to accept the responsibility for their actions and thoughts. With regard to this extended group of people, [the appellant] and [the step-father] fall into this category but [the appellee] does not.

As stated above, Dr. Voltin recommended that the appellant retain custody of both sons, whereas Dr. MacCallum recommended that custody of Ali be awarded to the appellee. However, when asked whether the modification of custody was in Ali's best interests, Dr. MacCallum admitted: "I can't make what is really a choice in the best interests of this older child because of the circumstances that have already been created [.]" Dr. Voltin and Dr. MacCallum were, in fact, in agreement upon several matters: (1) that the appellee had engaged in a course of conduct designed to alienate the children from their mother, (2) that, consequently, the children had been traumatized psychologically and (3) that the children would benefit from therapy. Moreover, Dr. MacCallum recommended that, assuming custody of Ali would be awarded to the appellee, a plan of supervised visitation be developed with regard to Bijan, in order to preclude further psychological harm to that child.[5]

**4.** In a letter dated September 15, 1992, to counsel for the appellant, Dr. Voltin stated:

> I had the opportunity to evaluate Bijan on July 2, 1992. During this evaluation I questioned Bijan on behaviors that had been causing problems at home, specifically, running away from home, cursing at his mother, refusing to obey his mother or step-father. Bijan told me that while he was in Lexington with his father and Ali, he was told to call his mother and tell her that he and his brother did not wish to come home. He also told me that his father told him to run away from home.... With regard to Bijan's oppositional behavior noted by his mother and step-father and by the description of the interactions that have been occurring between Bijan and his father, it is

> my medical opinion that within a reasonable degree of psychiatric certainty, Bijan is being subjected to emotional abuse by his father. It is also my opinion, that should this abuse continue it may cause irreparable damage. I have not had the opportunity to evaluate Bijan's brother Ali [;] however, by Bijan's descriptions, it appears that Ali too is suffering from emotional abuse.

**5.** During his deposition, Dr. MacCallum stated as follows:

> I feel certain that the same thing would happen to the younger child that has happened to the older if [the appellee] is allowed unsupervised visitation.
>     ....

The family law master is accurate in stating that the remarriage of the appellant, the relocation of the appellee, the fact that Ali has been residing with the appellee and has expressed a desire to continue to do so constitute changes in circumstances relative to Ali's status. However, syllabus point 2 of the *Cloud* case, *supra*, requires more than a change of circumstances. Rather, the clear directive of *Cloud* and its progeny requires the additional showing that a change of custody will materially promote the welfare of the child. This Court is of the opinion that such a showing has not been made in this action and that, specifically, the circuit court abused its discretion in modifying the divorce decree in awarding custody of Ali to the appellee.

Certainly, this Court is not unmindful of Ali's age and the length of time he has resided with the appellee. However, neither of the two experts in this action, Dr. Voltin and Dr. MacCallum, could state unequivocally that the modification of custody would materially promote that child's welfare. Instead, the evidence, on balance, tended to indicate that the modification could result in further harm.[6]

■ Upon further consideration, this Court is of the opinion that both therapy for the children conducted by a child psychiatrist or child psychologist and supervised visitation are warranted in this action. In fact, as we observed in *Mary D. v. Watt*, 190 W.Va. 341, 438 S.E.2d 521 (1992), therapy and supervised visitation are, at times, mutually dependent, in that proper therapy or counseling can reduce the need for supervised visitation. 190 W.Va. at 347, 438 S.E.2d at 527. Here, the issue of therapy was not addressed by the family law master or the circuit court even though Dr. Voltin and Dr. MacCallum indicated that it would be beneficial in helping the children cope with the appellee's conduct. As this Court recently stated in

*Mary Ann P. v. William R. P.*, 197 W.Va. 1, 8, 475 S.E.2d 1, 8 (1996):

> When family problems involving children are of sufficient depth and duration that professional counseling is needed to heal the relationships of the child or children with the parent or parents, or to assist the child or children in dealing with such emotional estrangement, a circuit court may direct participation in such counseling and may in its discretion determine how the cost of such counseling shall be paid.

*See also White v. Williamson*, 192 W.Va. 683, 694, 453 S.E.2d 666, 677 (1994).

■■ Accordingly, upon remand, the circuit court shall consider and formulate an appropriate program concerning both children for counseling to be conducted by a child psychiatrist or a child psychologist. The cost of the program shall be paid by the appellee, and the parties and the stepfather shall also participate in the program if practicable. Similarly, upon remand, the circuit court shall consider and formulate an appropriate plan for supervised visitation concerning the children. In *Mary D.*, supra, this Court indicated that supervised visitation is authorized in this State under *W. Va.Code*, 48–2–15(b)(1), which provides, generally, for visitation in divorce actions. Syllabus point 3 of *Mary D.* holds:

> Where supervised visitation is ordered pursuant to *W. Va.Code*, 48–2–15(b)(1) (1991), the best interests of a child include determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience. The person(s) appointed to supervise the visitation should have had some prior contact with the child so that the child is sufficiently familiar with and trusting of that person in order for the child to have secure feelings and so that the visitation is not harmful to his or her emotional well being.

---

So, realistically speaking, I can't recommend to the Court that [Bijan] be supervised in his visitations with his father until he is eighteen. But I would certainly strongly recommend to the Court that supervision continue so long as there is a potential influence and I would leave the decision about when that occurs up to the people who are supervising the visitation.

6. It should be noted that on August 16, 1996, the appellant filed a motion to supplement the record herein with various educational and juvenile records concerning alleged acts of misconduct committed by Ali while residing with the appellee. This Court denied the motion to supplement but granted leave to proceed upon a similar motion in circuit court.

Such a determination should be incorporated as a finding of the family law master or circuit court.

*See also Weber v. Weber,* 193 W.Va. 551, 554 n. 6, 457 S.E.2d 488, 491 n. 6 (1995).

Of course, in addition to therapy and supervised visitation, the circuit court will need to address the issue of child support concerning the children. In particular, evidence of year to year fluctuations in the appellee's income as a computer programmer following the 1990 divorce are relevant, under the circumstances of this action, in establishing the level of child support to be ordered. Syl. pt. 1, *Ball v. Wills,* 190 W.Va. 517, 438 S.E.2d 860 (1993).

■ Finally, the appellant contends that the circuit court committed error in failing to find that the appellant is entitled to reasonable attorney fees. Specifically, the appellant asserts that, subsequent to the entry of the divorce decree on January 8, 1990, she incurred in excess of $20,000 in attorney fees, primarily because of the misconduct of the appellee concerning custody of the children. Furthermore, the appellant indicates that, at all times relevant to this action, her income was substantially below that of the appellee. The appellee, however, contends that the denial of attorney fees was within the circuit court's discretion and that, in any event, the amount sought by the appellant was not itemized with sufficient particularity.

Generally, the relative degree of fault of a party in divorce related matters has been held by this Court to be a consideration in the award of attorney fees. Syl. pt. 5, *Rogers v. Rogers,* 197 W.Va. 365, 475 S.E.2d 457 (1996); syl. pt. 4, *Banker, supra; Hillberry v. Hillberry,* 195 W.Va. 600, 606–07, 466 S.E.2d 451, 457–58 (1995). In this action, the record contains ample evidence, as outlined above, supportive of the appellant's assertions concerning the appellee's attempts to alienate the children from their mother. In addition to the psychological harm imposed upon the children as a result, that conduct was in violation of the admonition expressed in the divorce decree that the parties would not adversely influence the minor children against the other parent. The appellant's lack of financial resources, compared to the resources of the appellee, is also shown in the record. Accordingly, the appellant is entitled to an award of reasonable attorney fees, and, upon remand, a determination shall be made as to the specific amount to which the appellant is entitled. *See Kinney v. Kinney,* 172 W.Va. 284, 304 S.E.2d 870 (1983).

Upon all of the above, the final order of the Circuit Court of Kanawha County, entered on January 24, 1995, is reversed, and this action is remanded to that court for the entry of an order restoring custody of the older child of the parties to the appellant. In addition, upon remand, the circuit court shall enter an appropriate order or orders concerning counseling for both children, supervised visitation, child support and an award of attorney fees to the appellant, all in accord with the principles of this opinion.

Reversed and remanded.

RECHT, J., sitting by temporary assignment.