674 S.E.2d 229

**STATE of West Virginia ex rel. West Virginia Department of Health and Human Resources, Petitioner Below, Appellant**

v.

**THE HONORABLE TIMOTHY RUCK-MAN, Family Court Judge of Clay County, West Virginia, Respondent Below, Appellee.**

No. 33912.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2009.

Decided Feb. 6, 2009.

Angela Alexander Ash, Attorney General's Office, Princeton, Counsel for the Appellant.

James Wilson Douglas, Sutton, Counsel for the Appellee.

McHUGH, Senior Status Justice.[1]

This is an appeal by the West Virginia Department of Health and Human Resources (hereinafter "DHHR") of the October 25, 2007, order of the Circuit Court of Clay County in which DHHR was granted a portion of the relief it sought in prohibition. In its petition to the circuit court for issuance of a writ of prohibition, DHHR maintained that a family court judge exceeded his authority by ordering DHHR to perform two particular tasks. First, DHHR claimed that the family court judge exceeded his authority by ordering DHHR to have a child protective services (hereinafter "CPS") worker conduct an investigation in a case where no current allegations of abuse and neglect were made. The purpose of the ordered investigation was to assess the risk of potential harm removal of the condition of supervision of visitation would pose to two minor children. Second, DHHR asserted the family court had no authority to order DHHR to provide supervised visitation services during the course of the investigation. The lower court upheld the family court judge's authority to order the investigation, but found that it was improper for supervised visitation to be ordered during the pendency of the investigation. After careful study of the points asserted and the relevant law governing the circumstances, we affirm the circuit court's decision.

## I. Factual and Procedural Background

The issues raised in this appeal stem from a child custody case in the Family Court of Clay County in which the father filed a contempt petition against the mother for failing to comply with court-ordered visitation. Following a hearing, the family court judge issued an order on August 17, 2007, which bears the heading of "Second Temporary Order."

The order reflects that the family court judge found no current allegations of abuse or neglect in the case which would justify reporting the matter to the circuit court and CPS pursuant to Rule 48 of the Rules of Practice and Procedure for Family Court (hereinafter "Family Court Rules") as a case of suspected abuse or neglect. Instead, the order of the family court provided:

> The court specifically finds ... that the history of this case demonstrates the potential for a risk of harm to the children in the event the court were to lift the requirement of supervised visitation without first considering whether such an action would be appropriate. The potential effects of the court lifting that requirement are grave enough that the court is not prepared to gamble with the safety of these children. The court, therefore, ORDERS this matter be referred to CPS in much the same way an overlap referral to circuit court would operate for purposes of investigating the potential for harm to the children that may be present in the event the court were to remove the supervision condition on Petitioner's visitation.

Thereafter the order directed CPS to investigate the family to determine if the father's visitation should continue to be supervised, with a report of findings of the investigation to be supplied to the family court and the parties. The order also stated that the worker completing the investigation appear at the next hearing in the case. Furthermore, the Second Temporary Order contained the requirement that supervised visitation services be furnished by CPS pending the report to the family court on whether it would be appropriate to remove the condition of supervision from further visitation orders.

1. Pursuant to an administrative orders entered September 11, 2008, and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

On September 6, 2007, both an emergency motion to stay the order of the family court and a writ of prohibition were filed in the circuit court by DHHR. DHHR maintained that a writ of prohibition was warranted in this case because the family court lacked authority to order CPS to conduct investigations and supervise visitation in situations where abuse or neglect is not present. A rule to show cause and a stay were issued by the circuit court on September 10, 2007, and a hearing was held in the circuit court on October 1, 2007. In an order dated October 25, 2007,[2] the circuit court denied DHHR's petition for writ of prohibition and lifted the stay with regards to the investigation, but granted relief to DHHR from the requirement that CPS workers supervise the visitation in the domestic suit.[3]

DHHR thereafter petitioned this Court for appeal of the October 25, 2007, circuit court order, for which review was granted by order dated April 3, 2008.

## II. Standard of Review

■ This appeal involves a challenge to both the relief denied and the relief granted by the circuit court through a writ of prohibition. In either instance, our established standard of review is de novo. Syl. Pt. 1, *Martin v. West Virginia Div. of Labor Contractor Licensing Bd.*, 199 W.Va. 613, 486 S.E.2d 782 (1997) ("The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is de novo."); Syl. Pt. 1, *State ex rel. Callahan v. Santucci*, 210 W.Va. 483, 557 S.E.2d 890 (2001) ("The standard of appellate review of a circuit court's refusal to grant relief through an extraordinary writ of prohibition is de novo.").

■ This appeal also involves matters of statutory construction. Our review of a cir-

cuit court's interpretation of a statute is also plenary. Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. Discussion

DHHR maintains that the circuit court committed error in two distinct ways: (1) by finding that the family court has authority to order DHHR to investigate situations in which abuse and neglect of minor children is not currently alleged; and (2) in finding that the family court has authority to order DHHR to supervise visitation outside of abuse and neglect cases. We will examine each issue in turn.

### A. Investigation

The circuit court found that the Legislature afforded family courts discretion under West Virginia Code § 48–9–301(a) (2001) (2004 Repl.Vol.) to order investigations regarding custodial issues. This statutory provision reads as follows:

> In its discretion, the court[4] may order a written investigation and report to assist it in determining any issue relevant to proceedings under this article [governing custody of children]. The investigation and report may be made by the guardian ad litem, the staff of the court or *other professional social service organization experienced in counseling children and families*. The court shall specify the scope of the investigation or evaluation and the authority of the investigator.

(Emphasis added.) The circuit court also found that DHHR was the type of organization which may be ordered to perform such

---

**2.** The circuit court first found in its order that it was appropriate for DHHR to seek a writ of prohibition even though it was not a party in the underlying case. The circuit court expressly found an extraordinary writ was DHHR's sole recourse under the circumstances because even if the temporary family court order were appealable, DHHR as a non-party would have no standing to pursue an appeal. *See* W.Va.Code § 53–1–1(1923) (2008 Repl.Vol.) and *State ex rel Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

**3.** To avoid redundancy, the reasoning underlying the circuit court's decision on both counts is set forth in Section III, *infra*, as part of our discussion of the issues raised in this appeal.

**4.** As later explained, the Legislature expressly conferred jurisdiction of custodial matters generally to family courts, so the reference to "court" in West Virginia Code § 48–9–301(a) includes family courts. *See* W.Va.Code § 51–2A–2(a)(6).

an investigation under the terms of the statute. The provision in the circuit court order addressing this latter finding states:

> 16. CPS can certainly be characterized as *a professional social service organization with experience in counseling children and families,* that could be ordered under the statute to investigate a family. Although CPS is not currently involved with the family, CPS has some prior experience with this particular family ... making it a logical choice to investigate the family....

(Emphasis added.)

DHHR does not dispute that family courts have authority to order investigations regarding custodial matters, but the agency does refute the circuit court's conclusion that DHHR may be ordered by a family court to complete them. DHHR suggests that the Legislature only intended the agency to be involved in investigations in cases where abuse and neglect are suspected, leaving the reporting procedure set forth in Family Court Rule 48, referred to in the briefs as the "Overlap Process," as the sole avenue available to family court judges to cause an investigation by DHHR to occur in cases where a "threat of harm"[5] to children is a concern.[6]

■■■ Our analysis of whether family courts have authority to order DHHR to perform investigations related to custodial determinations necessarily involves statutory interpretation and relevant rules of statutory construction. We undertake this task mindful that our "primary object[ive] in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). Determination of legislative intent may involve in pari materia consideration of statutes that "relate to the same persons or things, or to the same class of persons or things, or ... have a common purpose." Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975). We have long held, "[s]tatutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect." Syl. Pt. 3, *State ex rel. Graney v.*

---

5. DHHR's argument incorrectly suggests that any threat of harm would constitute suspected abuse and neglect which would invoke use of the procedure established in Family Court Rule 48. *See* W.Va.Code § 49–1–3 (2007) (2008 Supp.) (statutory definitions of abuse and neglect).

6. Family Court Rule 48 reads in relevant part as follows:

> RULE 48. CHILD ABUSE AND NEGLECT.
> (a) *Reports by family court.*—If a family court has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court shall immediately report the suspected abuse or neglect to the state child protective services agency, pursuant to W.Va.Code § 49–6A–2, and the circuit court.
> (b) *Written Referrals.*—In addition to any oral communication made by the family court to the state child protective services agency pursuant to subdivision (a), the family court shall forthwith prepare and submit a written referral to the agency office in the county where the family court proceeding is pending and, at the same time, transmit copies of the referral to the appropriate circuit court in that county, as determined by the chief judge, and to the prosecuting attorney. Such written referral shall set forth the specific allegations or information that led to the family court's determination of reasonable cause to suspect that a child or children involved in family court proceedings has been abused or neglected.
> (c) *Reports of investigations of child abuse and neglect.*—The state child protective services agency shall promptly provide the family court, and the circuit court, and the prosecuting attorney copies of any report of any investigation regarding the abuse and neglect of any minor child involved in family court proceedings, including those investigations conducted pursuant to subsection (b) above and Rule 3a of the Rules of Procedure for Child Abuse and Neglect Proceedings.
> (d) *Jurisdiction of proceedings.*—The family court shall retain full jurisdiction of proceedings until an abuse or neglect petition is filed. If an abuse or neglect petition is filed and the family court has entered an order regarding the allocation of custodial and decision-making responsibility between the parents, orders of the circuit court shall supercede and take precedence over any order of the family court regarding the allocation of custodial and decision-making responsibility between the parents. If the family court has not entered an order for the allocation of custodial and decision-making responsibility between the parents, the family court shall stay any further proceedings concerning the allocation of custodial and decision-making responsibility between the parents and defer to the orders of the circuit court....

*Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958). In the matter now before us, the intent of the Legislature in enacting the provisions of West Virginia Code § 48–9–301(a) cannot be determined without resort to relevant constitutional and statutory provisions regarding the authority of the family court in custodial matters and the duties of DHHR with regard to child welfare.

According to Article VIII, Section 16 of the West Virginia Constitution, "[f]amily courts shall have original jurisdiction in areas of family law and related matters as may hereafter be established by law." The Legislature defined the jurisdiction of family courts through the enactment of West Virginia Code § 51–2A–2 in 2001. A provision of this jurisdictional statute expressly extends authority of family courts to "[a]ll actions for the establishment of a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child." W.Va.Code § 51–2A–2(a)(6). The only express exception the Legislature placed on this grant of jurisdiction is when an abuse and neglect petition is filed in the circuit court. Family courts lose jurisdiction of custodial matters once an abuse and neglect petition is filed. W.Va.Code § 51–2A–2(c); *see also* Fam. Ct. R. 48(d).

■ Custodial issues in cases where the parents do not live together are addressed by the Legislature in Chapter 48, Article 9 of the West Virginia Code. W.Va.Code § 48–9–101(a) (2001) (Repl.Vol.2004). In this Article, the Legislature declares that the public policy underlying custodial issues is that "a child's best interest will be served by assuring that minor children have frequent and continuing contact with parents who have *shown the ability* to act in the best interest of their children." W.Va.Code § 48–9–101(b) (emphasis added). In furthering this public policy, the Legislature identifies specific legislative concerns in West Virginia Code § 48–9–102 (2001) (Repl.Vol.2004) that courts deciding custodial issues should examine, including a child's "[s]ecurity from exposure to physical or emotional harm." W.Va.Code § 48–9–102(1)(6). Family courts are granted the authority and discretion under West Virginia Code § 48–9–301(a) to "order a written

investigation and report to assist... in determining any issue relevant to proceedings" involving custody matters. Reading these statutory provisions in pari materia, it is clear that the safety of a child during visitation is a relevant custody issue. Thus we hold, in a circumstance where mandatory reporting of abuse or neglect pursuant to West Virginia Code § 49–6A–2 (2006) (2008 Supp.) and Rule 48 of the Rules of Practice and Procedure for Family Court is not implicated, a family court judge has discretion pursuant to West Virginia Code § 48–9–301(a) to order an investigation to assess the potential of exposing a child to harm should a custodial decision such as ordering unsupervised visitation be made. This naturally leads us to the next question of who may be ordered to conduct these investigations.

West Virginia Code § 48–9–301(a) provides that a court may order that an investigation pursuant to the statute be made by a guardian ad litem, staff of the court or "other professional social service organization experienced in counseling children and families." DHHR asserts two reasons why it believes the agency is not subject to orders of the family court under this statute. First, DHHR claims that if the Legislature intended DHHR to be included within the ambit of the statute it would have specifically named the agency in the listing of potential investigative entities. Second, DHHR maintains that it does not qualify as a social service agency that directly counsels children and families, but rather contracts for delivery of these services. We find neither argument persuasive as we find no authority to substantiate DHHR's bald assertions.

■ The unqualified reference in West Virginia Code § 48–9–301(a) to "professional social service organization experienced in counseling children and families" does not include or exclude any entity, nor does the language give any indication that only agencies actually providing counseling services may be utilized to conduct the investigation. Such lack of specificity standing alone does not create ambiguity necessitating court interpretation. *See Sizemore v. State Farm Gen. Ins. Co.,* 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) ("A statute is open to con-

struction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." (internal quotations and citation omitted)); Syl. Pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

 We simply find no reason to believe that the Legislature intended to exclude DHHR from the provisions of this statute, especially considering that one of the prescribed legislative goals established for DHHR under the child welfare laws is to "[p]rovide for early identification of the problems of children and their families, and respond appropriately with measures and services *to prevent* abuse and neglect or delinquency." W.Va.Code § 49–1–1(a)(8) (1999) (Repl.Vol.2004) (emphasis added). Accordingly, we hold that the West Virginia Department of Health and Human Resources falls within the classification in West Virginia Code § 48–9–301(a) (2001) (2004 Repl.Vol.) of "professional social service organization experienced in counseling children and families" which in the course of a child custody proceeding a family or circuit court may order to conduct an investigation and report to the court. However, family court judges ordering an investigation pursuant to West Virginia Code § 48–9–301(a) (2001) (2004 Repl.Vol.) should make every effort to determine the best available options for obtaining the information needed in a timely manner in each case and should only resort to ordering DHHR to perform an investigation and report to the family court when extraordinary circumstances exist.

 A family court judge's discretion to order an investigation should be tempered with reason which reflects consideration of the surrounding circumstances. Not every case warrants an investigation, and ordering DHHR to conduct the investigation should hardly be a routine matter. The circuit court's order in the present case relates an example of an extraordinary circumstance that supports the family court's selection of DHHR to conduct the investigation into the family circumstances. The order indicates that DHHR had completed an earlier investigation and was familiar with the family as well as the safety issues in question. Ordering another person or entity to perform an investigation on this same matter would have only protracted the investigatory period since another investigator would have needed additional time to become familiar with the situation and the parties. Other factors which would support an order for DHHR to perform an investigation in like circumstances include the lack of other resources available in the geographic area to conduct the risk assessment and the financial resources of the family.

### B. Supervision of Visitation

The circuit court granted DHHR relief in prohibition from the family court's order directing the agency to supervise visitation while the investigation regarding the safety of the children was being completed. Relying on the provisions of syllabus point three of *Mary D. v. Watt,* 190 W.Va. 341, 438 S.E.2d 521 (1992), the circuit court arrived at the following conclusion regarding supervised visitation in its October 25, 2007, order:

19. The Court does not believe that the Family Court can order supervised visitation without making a finding regarding the necessity for supervised visits, and without giving the parties an opportunity to be heard on proposed supervisors. Furthermore, when ordering supervised visits, and choosing a supervisor, the Family Court must consider and attempt to select a supervisor that is already familiar with the child, so as to minimize any stress to the child. By failing to give the parties an opportunity to be heard on this issue, and not making a finding as to why supervised visits are required, the Court believes the Family Court's order is erroneous as a matter of law. . . .

DHHR does not contest this particular portion of the circuit court's decision. Instead, DHHR claims that the circuit court

erred by not specifically finding that the family court lacked any authority under the facts of this case to order supervised visitation solely because the family court did not make the requisite finding that abuse and neglect were present. Relying on this Court's per curiam decision in *In re: Jason S. and Jasmine B.*, 219 W.Va. 485, 637 S.E.2d 583 (2006), DHHR maintains that the family court must first make a finding based on credible evidence regarding the presence of neglect or abuse before it may order supervised visitation. We find DHHR's emphasis on findings of abuse and neglect in this regard misplaced.

■■■■■■ Our case law recognizes that "[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996). We have further held that "[b]ecause of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children." *Id.*, Syl. Pt. 3, 470 S.E.2d 193, in part. Moreover, we have said that in determining the propriety of supervised visitation, "the best interest of a child includes determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience" during the course of visitation. *Mary D.*, Syl. Pt. 3, in part. Although a family court is required to determine that claims of a child's safety being jeopardized are supported by credible or trustworthy evidence before supervised visitation may be ordered, threats to safety are not limited to acts of abuse and neglect. *See e.g.*, *Alireza D. v. Kim Elaine W.*, 198 W.Va. 178, 479 S.E.2d 688 (1996); *Mary Ann P. v. William R. P., Jr.*, 197 W.Va. 1, 475 S.E.2d 1 (1996); *Belinda Kay C. v. John David C.*, 193 W.Va. 196, 455 S.E.2d 565 (1995). Supervision and/or further restrictions to visitation are required to be ordered under the provisions of West Virginia Code § 48–9–209 (2008) (2008 Supp.) when credible informa-

tion establishes that abuse and neglect as well as other enumerated conditions exist. However, the court is not absolved of its responsibility to examine factors beyond those listed in the statute mandating limitations on visitation when the court has facts before it which raise concerns about exposure of a child to harm during visitation. The best interests of the child remains the overarching consideration of courts in making custody decisions, including visitation matters.

■■■■ This Court has not had occasion to address the precise issue of whether supervised visitation may be ordered during the pendency of a court-ordered investigation into the risk of harm posed to children should a request for unsupervised visitation be granted. As the circuit court recognized, we addressed the general procedure that courts should follow prior to ordering supervised visitation in syllabus point three of *Mary D.*, in which we stated:

> Where supervised visitation is ordered pursuant to ... [statutory law],[7] the best interests of a child include determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience. The person(s) appointed to supervise the visitation should have had some prior contact with the child so that the child is sufficiently familiar with and trusting of that person in order for the child to have secure feelings and so that the visitation is not harmful to his or her emotional well being. Such a determination should be incorporated as a finding of the family [court judge] ... or circuit court.

The circuit court judge applied the general precepts of this holding from *Mary D.* to the present case in order to determine that supervised visitation was inappropriate during the investigation period. The October 25, 2007, order reflects the circuit court's reasoning as follows:

7. Chapter 48 of the West Virginia Code was completely reorganized, in some respects amended and reenacted in 2001. 2001 Acts of the W.Va. Legislature c. 91; *see* W.Va.Code § 48–1–101(b). The statutory reference was omitted from the quoted material since it no longer has

significance under the arrangement of the current domestic relations statutes. Under the recodification, visitation matters are primarily contained within Article 9 which bears the heading of "Allocation of Custodial Responsibility and Decision Making Responsibility of Children."

22. In the instant case, the Family Court did not make any specific finding that abuse has occurred that would support the extraordinary step of supervised visits, only that there was potential risk in not supervising visits. Also, the Family Court did not consider the wishes of the parties when choosing a supervisor, and it does not appear from the order that the Family Court made any attempt to select a supervisor that was close with the children, and has a relationship with the children. Furthermore, the Family Court did not consult with proposed supervisor (CPS), before ordering CPS to supervise visitation. The Court believes that before the Family Court requires any third party to supervise visitation, that third party should have an opportunity to be heard as to their willingness to supervise, and their relationship with the children.

Thereafter, the circuit court order suggests the following procedure:

23. Before Judge Ruckman can order CPS to supervise visitation, the Family Court must conduct a hearing and give all parties, including CPS, notice and an opportunity to be heard on the issue. The Family Court must make findings of fact and conclusions on the record regarding the need for supervision, and give all parties an opportunity to be heard on proposed supervisors. Recognizing that CPS does have an extensive caseload, the Family Court must exhaust other options for supervisors, for example other family members or organizations that provide for family visits, before ordering CPS to supervise the visits.

 We find the circuit court's approach to be a sound extension of existing law. Consequently, we hold a family court finding potential safety risks to minor children that warrant a court-ordered investigation pursuant to West Virginia Code § 48–9–301 may not order visitation between a child and the party posing the potential risks while the investigation proceeds. Supervised visitation may be ordered following the investigation if the court finds the investigation or other information supplies the requisite credible evidentiary basis to believe a child's safe-ty will be jeopardized if visitation is not supervised. Where supervised visitation is contemplated, the family court should schedule a hearing, with notice to all parties and any proposed supervisors, regarding the most suitable source for supervision under the circumstances. The purpose of the hearing is to determine the most appropriate source for supervision by considering (1) whether the child is comfortable and familiar with a potential supervisor through prior contact or otherwise, and (2) whether the potential supervisor is willing and has ability to fulfill the obligation. In order to provide an adequate basis for review, this determination should be incorporated as a finding of the family court judge in the order granting supervised visitation.

 The circuit court's order also cautions the family court not to unduly burden DHHR with responsibility for supervising visitation given the caseload of the CPS workers and the gravity of the work they are called upon to perform. We echo this concern and emphasize that family courts should exhaust other available and reasonable options such as family members or community organizations before looking to DHHR to provide supervision of visitation.

## IV. Conclusion

Concluding our review de novo, this Court is of the opinion that the circuit court correctly reached the proper result for the reasons stated above. The October 25, 2007, order of the Circuit Court of Clay County, therefore, is affirmed.

Affirmed.

Justice ALBRIGHT not participating

Senior Status Justice McHUGH sitting by temporary assignment.