# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John L.,**
**Petitioner/Appellant Below, Petitioner**

**vs.)  No. 17-0354** (Monongalia County 12-D-456)

**Laura W.,**
**Respondent/Appellee Below, Respondent**

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John L., by counsel Daniel R. Grindo, appeals the Circuit Court of Monongalia County's March 1, 2017, order affirming the family court's final order.[1] Respondent Laura W. did not file a response. On appeal, petitioner argues that the circuit court erred in concluding that certain rules do not apply to pro se litigants, denying his petition to modify, and allowing respondent to present evidence not previously disclosed.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 5, 2013, the parties were divorced and the family court entered a parenting plan governing their two children. Respondent was designated as the parent with primary custodial responsibility and petitioner, who lives in Texas, was given custodial responsibility every school spring break, Thanksgiving break, a portion of the school Christmas break, and for seven continuous weeks each summer. Subsequent to the entry of this order, petitioner filed a petition to modify and petition for contempt. Petitioner sought modification of the parenting plan so that he would be designated the primary custodial parent. Petitioner also sought to have respondent held in contempt for relocating to North Carolina without providing advance notice and in violation of the family court's prohibition pending resolution of the petition for modification. Petitioner also sought to have respondent held in contempt for her failure to arrange counseling for their children, as required by prior court order.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

Finding that the proposed modification was not in the children's best interests, the family court denied petitioner's petition to modify the parties' parenting plan. In reaching this conclusion, the family court noted that, when the parties were together, respondent was a stay-at-home mother and the children's primary caretaker. Further, the children had remained in respondent's primary care since the parties' separation, except for a five-month period in 2015.[2] Although the family court noted that the children, who were ten years old and twelve years old, were not of an age where their wishes were controlling, it nonetheless noted that they expressed their desire to remain in respondent's primary care, and these wishes have remained consistent since the filing of the divorce petition in 2012. Moreover, the guardian ad litem recommended that it was in the children's best interests to remain in respondent's primary care.

Nonetheless, the family court also found that respondent had "almost no credibility[.]" The family court acknowledged that respondent mischaracterized her relationship with a young man, with whom she became romantically involved when he was only sixteen years old. Respondent denied a continuing relationship with him, but, in fact, married him in the summer of 2016. Respondent also informed the family court that she had no intention of moving to North Carolina to live with the young man prior to a final ruling; however, respondent "almost immediately" moved to North Carolina with the children to live with him.

The family court further found that respondent had ignored the court's orders regarding counseling for the children on multiple occasions. Although respondent testified that she had begun counseling for the children in North Carolina, she produced no substantiating evidence. Thus, the family court found that respondent had been in contempt of the court's orders at different times in the past "without question." The question before the family court became, "not whether [respondent] deserves to be sanctioned – she does – but rather what sanction might be appropriate." Ultimately, the family court determined that modifying the parties' parenting plan to name petitioner the primary custodial parent would not "improve the children's lives, and indeed the [c]ourt is inclined to believe the children would suffer somewhat were they to be placed in the primary care of [petitioner]."[3] Conversely, the children were reportedly doing well in school while in respondent's care, described a positive relationship with respondent's family, and appeared healthy. Despite having reservations about each parent and their home environment and finding that respondent was in contempt, the family court ultimately concluded that the children's best interests would not be served by a modification of the parenting plan. As a sanction for respondent's contempt, the family court awarded petitioner $600 for his "cost and trouble in seeking to enforce the orders." The family court memorialized these findings and conclusions in its December 29, 2016, "Modification and Contempt Order."

---

[2]During this five-month period, the children resided with petitioner in Texas. While with petitioner, the children were exposed to intense arguing and volatility between petitioner and his new wife. The children reported being scared at times. Although criminal charges were not filed, the police became involved following several of these arguments.

[3]This finding was based on the events that transpired during the five-month period the children lived with petitioner.

Petitioner appealed this order to the circuit court. Petitioner raised three assignments of error: first, the lower court erred in refusing to modify the parenting plan in light of respondent's continued contempt, interference with petitioner's access to the children, relocation in violation of West Virginia Code § 48-9-403, perjury, and refusal to provide the children with court-ordered counseling. Second, the lower court erred in taking the children's testimony in violation of the procedures set forth in Rule 17 of the Rules of Practice and Procedure for Family Court and Rule 8(b) of the Rules of Practice and Procedure for Child Abuse and Neglect Proceedings. Third, the lower court erred in permitting respondent to testify and offer evidence after failing to participate in discovery.

The circuit court affirmed the family court's December 29, 2016, order. The circuit court found that respondent's relocation did not warrant modification of the parenting plan because the relocation did not impair petitioner's ability to exercise his custodial responsibilities.[4] The circuit court also found that the move did not amount to a change in circumstances warranting modification because the change does not negatively impact the proportionality of his custodial responsibilities. Further, the children's best interests continue to be best served by remaining in respondent's primary custodial care.

With respect to respondent's failure to consistently enroll the children in court-ordered counseling, the circuit court concluded that respondent has not so neglected their mental health so as to warrant terminating her primary custody. The circuit court noted no "*present* refusal, failure or inability" to provide the children with counseling. Thus, it found that the children were not being neglected under West Virginia Code. Even if they were, a proper "limit" would be to admonish respondent.

In addressing petitioner's second assignment of error concerning the children's testimony, the circuit court found that the family court complied with the relevant rules. The circuit court noted that both parties appeared pro se before the family court, and pro se litigants are not entitled to be present during the interview or review the children's testimony.

Lastly, the circuit court found petitioner's argument that respondent could not testify on her own behalf before the family court "patently absurd[:] . . . . Essentially, [petitioner] asserts that his due process rights were violated because [respondent] was afforded hers." Thus, it found no abuse of discretion in the family court's allowing respondent to testify. These rulings were memorialized in an order entered on March 1, 2017, and it is from this order that petitioner appeals.

We have previously held that

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous

---

[4]Petitioner lives in Granbury, Texas. According to the circuit court, petitioner's home was 1,274.5 miles from the children's home in West Virginia, whereas he is now 1,309 miles from the children's North Carolina residence.

3

standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 475, 607 S.E.2d 803, 804 (2004).

Petitioner's first argument on appeal is that the circuit court erred in finding that Rule 17(a) of the Rules of Practice and Procedure for Family Court and Rule 8(b) of the Rules of Procedure for Abuse and Neglect do not apply to pro se litigants. Rule 17(a) of the Rules of Practice and Procedure for Family Court provides that "Rules 8 and 9 of the Rules of Procedure for Child Abuse and Neglect Proceedings shall govern the taking of testimony of children." Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings, in turn, provides that

> [t]he court may conduct in camera interviews of a minor child, outside the presence of the parent(s). The parties' attorneys shall be allowed to attend such interviews, except when the court determines that the presence of attorneys will be especially intimidating to the child witness. When attorneys are not allowed to be present for in camera interviews of a child, the court shall, unless otherwise agreed by the parties, have the interview electronically or stenographically recorded and make the recording available to the attorneys before the evidentiary hearing resumes. Under exceptional circumstances, the court may elect not to make the recording available to the attorneys but must place the basis for a finding of exceptional circumstances on the record. Under these exceptional circumstances, the recording only will be available for review by the Supreme Court of Appeals. When attorneys are present for an in camera interview of a child, the court may, before the interview, require the attorneys to submit questions for the court to ask the child witness rather than allow the attorneys to question the child directly, and the court may require the attorney to sit in an unobtrusive manner during the in camera interview. Whether or not the parties' attorneys are permitted to attend the in camera interview, they may submit interview questions and/or topics for consideration by the court.

Petitioner argues that references to the word "attorney" in these rules do not preclude the rules' application to pro se litigants, and he further argues that he should have been provided with a recording of his children's testimony.

Petitioner offers no law or analysis to support his contention that the lower court's failure to provide him with a recording of his children's testimony amounts to reversible error or would result in him being awarded primary custody. The Rule allows a court not to make the recording available in exceptional circumstances. Although the lower courts did not articulate any exceptional circumstances, we nevertheless find no merit to petitioner's argument that such failure results in him being awarded primary custody. To begin, we note that the children's testimony did not form the primary basis for denying petitioner's modification request. The family court acknowledged that, due to their children's age, their wishes were not controlling and did not accord those wishes undue weight. Rather, the lower courts gave paramount consideration to the children's best interests. In reaching the conclusion that the children's best interests were served by leaving respondent as the primary custodian, the lower courts noted that,

4

prior to the parties' separation, she was a stay-at-home mom and the primary caretaker. Except for a five-month period in 2015 that was not a positive experience for the children, they have remained in respondent's custody. The lower courts noted that the children do well in school, appear healthy, and "appear to be doing well in respondent's home" and with respondent's family. Moreover, the lower courts noted that the guardian ad litem recommended that respondent be awarded primary custody on two separate occasions. Finally, the lower courts found that, due to the volatile situation reported in petitioner's home, the children may suffer if placed in his primary custody. "In . . . custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996); *State, ex rel. W.Va. Dep't of Health & Human Res. v. Ruckman*, 223 W.Va. 368, 674 S.E.2d 229 (2009) ("The best interests of the child remains the overarching consideration of courts in making custody decisions[.]"). Because the lower courts found that the children's best interests would be served by remaining in respondent's primary custody, we find no merit to petitioner's argument that any violation of Rule 8 results in him being awarded custody.

Petitioner's second assignment of error is that the lower courts erred in not granting his petition to modify the parties' parenting plan. Petitioner submits that respondent's relocation constitutes a material change in circumstances and highlights that it was hidden from the court and, therefore, not in good faith. Petitioner also contends that the lower courts "failed to recognize the existence of a limiting factor;" namely, that respondent's refusal to comply with the lower courts' counseling orders renders the children "neglected" as defined in West Virginia Code § 49-1-201.

West Virginia Code § 48-9-401 provides that

(a) Except as provided in section 9-402 or 9-403, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

(b) In exceptional circumstances, a court may modify a parenting plan if it finds that the plan is not working as contemplated and in some specific way is manifestly harmful to the child, even if a substantial change of circumstances has not occurred.

(c) Unless the parents have agreed otherwise, the following circumstances do not justify a significant modification of a parenting plan except where harm to the child is shown:

(1) Circumstances resulting in an involuntary loss of income, by loss of employment or otherwise, affecting the parent's economic status;

(2) A parent's remarriage or cohabitation; and

5

(3) Choice of reasonable caretaking arrangements for the child by a legal parent, including the child's placement in day care.

(d) For purposes of subsection (a) of this section, the occurrence or worsening of a limiting factor, as defined in subsection (a), section 9-209, after a parenting plan has been ordered by the court, constitutes a substantial change of circumstances and measures shall be ordered pursuant to section 9-209 to protect the child or the child's parent.

West Virginia Code § 48-9-403, however, specifically provides that "[t]he relocation of a parent constitutes a substantial change in the circumstances under subsection 9-401(a) of the child *only when it significantly impairs either parent's ability to exercise responsibilities that the parent has been exercising*." (Emphasis added). Given that petitioner lives in Texas, the parenting plan was already tailored to accommodate the same approximate distance between the parties. Petitioner does not allege that respondent's relocation impairs his ability to exercise the responsibilities he has been exercising. Accordingly, we find that respondent's relocation does not constitute a substantial change in circumstances here.

Petitioner further argues that because respondent failed to provide advance notice of the relocation, it was not in good faith and warrants modification of the parenting plan. Failure to comply with the notice requirements "may be a factor in the determination of whether the relocation is in good faith under subsection (d) of this section and is a basis for an award of reasonable expenses and reasonable attorney's fees to another parent that are attributable to such failure." *Id.* at § 48-9-403(b)(5). Where a court determines that a relocation was not made in good faith, "the court may modify the parenting plan in accordance with the child's best interests and the effects of the relocation on the child." *Id.* at § 48-9-403(d)(3). Therefore, the controlling factor here is the children's best interests. As outlined above, modification is not in the children's best interests, and we find no error in the circuit court's refusal to modify the parenting plan even if respondent's relocation was not made in good faith.

Petitioner's final argument concerning modification is that respondent's failure to provide the children with court-ordered counseling renders them neglected children and warrants modification. As quoted above, West Virginia Code § 48-9-401(d) provides, in sum, that the occurrence of a "limiting factor" constitutes a substantial change of circumstances "and measures shall be ordered pursuant to section 9-209 to protect the child[.]" West Virginia Code § 48-9-209(a) specifies that a parent who has "abused, neglected or abandoned a child" constitutes a limiting factor. A "neglected child" is one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

*Id.* at § 49-1-201. If a party is found to have engaged in a limiting factor, "the court shall impose limits that are reasonably calculated to protect the child . . . from harm." *Id.* at § 48-9-209(b).

6

Although respondent previously failed to comply with the family court's order of counseling for the children, she testified that she was actively seeking to enroll the children in consistent counseling at their new home in North Carolina. In other words, no "*present* refusal, failure or inability" to provide the children with the court-ordered counseling has been established. Even assuming that petitioner had established that the children were neglected, modification is not necessarily warranted. Instead, a court must "impose limits that are reasonably calculated to protect the child[.]" *Id.* We find no error in the circuit court's conclusion that modification would not be a proper limitation due to the finding that the children's best interests continue to be served by remaining in respondent's primary custody.

Petitioner's final assignment of error is that the family court erred in allowing respondent to present evidence at the final hearing due to her purported failure to respond to discovery concerning her living arrangements and relationships or comply with the scheduling order. Petitioner contends that he was denied due process as a result of this error. Petitioner, however, fails to identify any specific evidence introduced by respondent that he was prejudiced by or unable to counter. In advance of the final hearing on petitioner's petition for modification, the family court entered a scheduling order providing that each party was to serve the other with a financial statement. The scheduling order provided for no other discovery. Although the parties were directed to submit pretrial memoranda, the scheduling order provided that a failure to do so "*may* result in sanctions, including a finding the party has defaulted on all contested issues, and the imposition of the other party's costs[.]" (Emphasis added). Not only does the scheduling order fail to support petitioner's argument that the family court had a mandatory duty to exclude respondent's testimony, but petitioner also fails to cite any law supporting his position or his claim that he was denied due process. Therefore, we find no error in the family court's permitting respondent to testify at the final hearing.

For the foregoing reasons, the circuit court's March 1, 2017, order affirming the family court's order is hereby affirmed.

Affirmed.

**ISSUED:** April 9, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

7